**PFISTER, Plaintiff-Appellant, v. CLEVELAND (City), Defendant-Appellee.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 22638.  Decided February 9, 1953.

244

Sindell & Sindell, Cleveland, for plaintiff-appellant.

R. F. Mooney, Richard Green, Cleveland, for defendant-appellee.

**OPINION**

By KOVACHY, J:

This is an appeal on law from a verdict of a jury and a judgment in the Common Pleas Court of Cuyahoga County for $6000.00 for personal injuries sustained by plaintiff below, while a passenger on a street car operated by defendant below. Defendant admitted liability during the trial of the cause and the case was submitted to the jury on the question of damages.

Plaintiff-appellant complains that the amount allowed was grossly inadequate and makes these assignments of error:

I. Trial court erred in failing to grant new trial for gross misconduct of defense counsel in final argument.

II. Trial court erred in giving defendant's special charge number one.

III. Trial court erred in failing to exclude Defendant's Exhibit H and testimony referring thereto.

IV. The verdict was grossly inadequate and against the manifest weight of the evidence.

We give consideration to these matters in the order presented.

I. Plaintiff claims that a new trial should have been granted in the court below on the ground of gross misconduct of defense counsel for saying in argument:

"This is George Pfister's only time in court; this is the only time that he can be awarded damages and **any verdict you award him will be tax free.**" (Emphasis added.)

We find from the review of the record that no objection was made by the plaintiff at the time this statement was made in argument by defense counsel and that the matter was first raised during a motion for new trial to the trial court.

Under the Internal Revenue Code compensation for injuries received is tax exempt. The Internal Revenue Code, Section 2 (b)(5) in providing for exemptions, says:

"COMPENSATION FOR INJURIES OR SICKNESS:

"Except in the case of amounts attributable to (and not in excess of) deductions allowed under section 23 (x) in any

prior year, amounts received, through accident or health insurance or under workmen's comqensation acts, as compensation for personal injuries or sickness, plus the amount of any damages received whether by suit or agreement on account of such injuries or sickness, and amounts received as a pension, annuity or similar allowance for personal injuries or sickness resulting from active service in the armed forces of any country."

Technically, it would seem that compensation for loss of wages should be taxable, but where a verdict is general, there is no way of determining the amount apportionable to wages, so that the entire verdict in practice becomes tax free. Perhaps for absolute exactitude and justice, the jury should be so told and instructed to make an allowance in its general verdict for such item, but the formula for determining such tax element is so complicated that an instruction with respect to it would be most confusing to the jury and at best most difficult of ascertainment. As a practical solution, therefore, the tax factor is ignored by the trial court in charging the jury. See 9 A. L. R. 2d, 318 to 321.

We are of the opinion that since the trial court says nothing and the record is silent about tax requirements in determining damages in a personal injury suit, reference to the verdict being tax free in final argument to the jury, even though true, is highly improper. Moreover, the payment of income tax holds no mystery to the average juror for it has universal application today. We, therefore, are of the belief that an objection by the plaintiff at the time of the occurence with a request of the court to instruct the jury to disregard the improper remark could have cured any harm done and that failure to so do was equivalent to a waiver of the incident. We find a situation comparable to the one at bar in **Walsh v. Thomas' Sons, 91 Oh St 210.** At page 217 Judge Jones had the following to say:

"The argument of counsel in this connection was wholly improper and beyond the field of legitimate argument * * *. An examination of the record, however, will disclose that opposing counsel did not make any objection at that time. At the close of the entire argument a general objection was made. In view of the fact that the court's attention was not directed at the time to the improper remarks, so that the court might take proper action thereon, this question is not available to plaintiff in error."

**Wilson v. Wesler, Admrx. etc., 27 Oh Ap 386.** Paragraph 1 of syllabus:

"Alleged misconduct of counsel in argument to jury cannot

be complained of, where no objection was interposed at the time, nor was court requested to caution or instruct jury, and no exception was taken to any part of argument."

See also: **Scott v. State of Ohio, 107 Oh St 474;** Bartlebaugh v. Penna. R. R. Co., 78 N. E. 2d 410; **Zielinsky v. Cleveland Ry. Co., 6 Abs 636; Hermman v. Levy et al., 9 Oh Ap 269.**

II. Plaintiff claims error in the giving of defendant's special charge No. 1, before argument, which included the statement:

"You must not be persuaded or influenced by bias, prejudice, or **argument of counsel,** but must apply your judgment to the facts and the evidence in the case" (Emphasis added.) urging that the language used instructed the jury that final argument has absolutely no meaning in the trial of a civil case. If such were the effect of this statement, we should not hesitate to declare it prejudicial error and cause for reversal of the judgment in the court below. However, this language was preceded by the following:

"The question of damages is a matter to which you should apply your sound judgment and discretion, taking into consideration all the evidence, the facts and all the circumstances disclosed by the evidence. It is important that this defendant be not required to pay one cent more than full and just compensation, and it is equally important that the plaintiff be paid every cent which the evidence shows he should receive as fair and just compensation."

It is our view that the statement objected to is corelated to the language immediately preceding it, and its intimate meaning gathered from a consideration of the entire statement made. The statement as a whole thus interpreted is to the effect that the jury, on the question of damages apply its sound judgment and discretion and be guided by all the evidence, all the facts and all the circumstances disclosed by the evidence and not be persuaded or influenced by bias, prejudice or argument of counsel to require the defendant to pay one cent more or to give the plaintiff one cent more than fair and just compensation, applying their judgment to the facts and evidence in the case. It thus seems clear to us that the jury is in no way urged to disregard the arguments of counsel but is admonished not to permit themselves to be swayed away from and beyond the facts and evidence in the case bearing on the question of damages and thereby moved to give more or less than what is fair and just compensation.

We accordingly find no prejudicial error in this assignment. See **Morgan Engineering Co. v. Bowser, 32 Abs 322 at page 327.**

III. Plaintiff claims that error was committed in permitting

an incompetent document, "Exhibit H" to be introduced with testimony referring thereto.

We find the following proceedings on page 362 of the record:

"Mr. Lombardo: I would like to offer defendant's Exhibit H.

"Mr. Sindell: I object on the ground it is too general, Your Honor, please.

"The Court: Let me ask, have you covered all the categories in here?"

Then follow eleven pages of testimony, much of it concerning the contents of this exhibit, and on page 374 the following occurs:

"Mr. Lombardo: I will re-offer Exhibit H again.

"The Court: It will be received for what it is worth, under all the explanations that have been made about it."

It would seem from the above that Exhibit H was received in evidence without objection by plaintiff and for that reason no error can be claimed therefrom.

The record presents another reason why plaintiff cannot claim prejudicial error in the admission of this exhibit. He permitted the reading of the document to the jury without objection before its introduction as an exhibit.

In **Sandusky Packing Co. v. Huffman, 129 Oh St 300,** the syllabus reads as follows:

"A judgment will not be reversed for error in the admission ■ of an incompetent document, over objection and exception, where the record discloses that parol evidence as to the incompetent contents of the document was received without objection and exception."

For the reasons stated we hold no reversible error in this matter.

IV. Plaintiff says that the verdict was grossly inadequate and manifestly against the weight of the evidence. The law on this proposition is well stated in the syllabus of a case decided by our Supreme Court **Toledo Railway & Light Co. v. Mason, 81 Oh St 463:**

"1. In an action to recover damages for personal injuries, ■ a new trial may be granted on the ground of inadequacy of the damages found by the jury, when it appears upon the facts proved that the jury must have omitted to take into consideration some of the elements of damages properly involved in the plaintiff's claim.

"2. On error in the circuit court to the overruling of a motion for a new trial, on the ground of the inadequacy of the damages found by the jury in an action for personal injuries, the circuit court may reverse the judgment of the court of common pleas and grant a new trial on the ground that the verdict is not sustained by sufficient evidence."

It is based upon a consideration of **paragraph 6 of §11576 GC** (formerly **§5305 GC**):

"A former verdict, report or decision shall be vacated and a new trial granted by the trial court on the application of a party aggrieved, for any of the following causes affecting materially his substantial rights.

\* \* \*

"6. That the verdict, report or decision is not sustained by sufficient evidence, or is contrary to law."

The plaintiff was injured on March 13, 1950, while riding in a street car trailer of a train of two cars operated by the defendant. He was thrown to the floor as a split rail derailed the trailer and was knocked unconscious for from two to five minutes. Taken to Glenville Hospital he complained of "severe headache and feeling of nausea, also blurred vision and photophobia." The hospital reported:

"Head contusion of right temporal region. No depression of skull. Final diagnosis: Cerebral concussion."

Plaintiff went home after two full days in the hospital and remained there until March 22, 1950, when he returned to his regular work as a maintenance electrician at Reliance Electric & Engineering Company until May 14, 1950, when he laid off work until July. From July 17, 1950, on he worked continuously at his job with short interruptions including a stay at Cleveland Clinic Hospital for five days, until the day of the trial. His attending physician at Glenville Hospital gave his employer a letter stating he could return to work after one week. He sought the help of Cleveland Clinic on May 23rd, 24th and June 30, 1951, complaining of "(1) Headaches, (2) impaired hearing and earache, right ear; (3) occasional roaring and sounds like he is in a barrel; (4) poor balance most of time; (5) vertigo at times; (6) blurred vision; (7) pain in the cervical spine; (8) stiff, painful neck and shoulders." The findings of the Clinic were:

"1. Marked loss of hearing on right side, slight on left; (2) Nystagmous movement of the eyes; (3) The tendon reflexes in the lower extremities, slightly more action than normal; (4) Swaying and unsteadiness when standing with eyes closed (Rhomberg test); (5) Psychiatric examination normal; (6) Mild Periarthritis of cervical spine (findings are meagre); (7) Electro-encephalogram, normal; (8) X-rays of skull, negative." The final diagnosis made July, 1950, was:

"Labrinthine vertigo, post concussional syndrome, periarthritis of the cervical spine, perception deafness in the right side."

Dr. Zucker, Neurologist, permitted plaintiff to return to work in July, 1950.

The defendant presented no testimony to contravert these complaints and findings, other than a doctor who gave plaintiff a routine examination at his home a few days after the accident and before the symptoms above described had fully developed. It seems most probable to us that the jury found these complaints in the main to be valid and gave due consideration to them in arriving at their verdict.

The chief divergence between the plaintiff and the defendant, with respect to the injuries suffered by plaintiff, comes into play from the standpoint of the permanency of his injuries, particularly the perceptive deafness of the right ear and the vestibular vertigo due to injury to the eighth nerve. Plaintiff's experts were of the opinion that these deficiencies were of a permanent nature because they had not cleared up in the two-year period during which plaintiff was treated. They also said that the only alleviation so far as the vestibular vertigo was concerned was an operation sectioning the vestibular portion of the eighth nerve. Defendant in opposition to the claim of permanency presented an Otolarynologist who examined the plaintiff on April 5, 1951, and testified that according to his tests plaintiff at that time "had a moderate hearing loss of under or to 25% in each ear," and that his tests "of the labyrinthine or balance part of the ear" disclosed normal reactions as to each ear and that all tests made by him were objective findings.

The $6000.00 allowed by the jury in this case, in our opinion, is adequate compensation to the plaintiff for his injuries, loss of earnings (about three months) and $700.00 medical expenses provided the deafness of his right ear (his doctor claimed total) and the vestibular vertigo are not permanent in nature. The jury obviously determined such injuries not to be permanent.

After a careful study of all the testimony and the exhibits in the record, on the question of injuries suffered by the plaintiff directly flowing from this accident, we come to the clear conclusion that there was sufficient evidence presented at the trial of this cause to warrant the jury in finding that the total deafness of the right ear and the damage to the eighth nerve producing the vestibular vertigo was not permanent in nature.

Nystagmus movement of the eyes, the Rhomberg and the Coloric tests, are objective tests of the labyrinthine or balance part of the ear. Nystagmus movement of the eyeballs was present and the Rhomberg test was positive in the first visits of the plaintiff to the Cleveland Clinic confirming the subjective complaints of the plaintiff as to poor balance and vertigo. However, at the visits to the Clinic on October 17,

1950, March 15, 1951, April 19, 1951 and February 22, 1952, these two tests were negative, despite the fact that the complaints of the plaintiff continued the same. His eyes, examined on February 22, 1952, were reported normal in reaction to light and accommodation with pupils equal. The hearing was tested by an Audiometer in which the plaintiff was required to respond to tones electrically transmitted to his ear. This test is subjective and depends for accuracy upon the will and desire of the subject. Defendant's expert tested the hearing with tuning forks used in such a way that the patient, in response to the tones produced by them, was unable at the time to tell whether the sound was heard by his right ear or left ear, thereby permitting the doctor to give absolute verity to the response given. This expert also reported the Nystagmus movement of the eyes and the Coloric tests negative.

It is fundamental that the jury determines the weight to be given the opinions of expert witnesses and can believe one or the other of two conflicting conclusions, depending upon which one, in their judgment, is the better sustained by the facts on which based and the reasons advanced. **Clark v. State of Ohio, 12 Ohio 483.**

We are consequently constrained to hold that the verdict was not grossly inadequate nor manifestly against the weight of the evidence.

**Columbus Railway Light & Power Co. v. Pickles, 28 Oh Ap 183, paragraph 3** of syllabus:

"To what extent injuries sustained by plaintiff, when street car ran into rear of the automobile, were permanent, held question for jury."

**Stremmel v. Lynch, 17 Abs 197, parag. 2** of syllabus:

"It is the obligation of a reviewing court to support the judgment of a trial court if it can be done; to reverse a judgment on the weight of the evidence, the verdict must be so contrary to the probative effect of the evidence as to shock the conscience."

We accordingly find no prejudicial error in this case and affirm the judgment rendered. Exceptions noted. Order see journal.

SKEEL, PJ, HURD, J, concur.